Good afternoon, Counsel. I'm Judge Dennis, together with Judge Englehardt and Judge Hicks, will be your panel for today. In the case to be argued, Document Operations LLC versus AOS Legal Technologies Incorporated. That's 20,000 or 20-20388. First, we'll hear from Ms. Block and then Mr. Newark. Ms. Block. Thank you, Judge. May it please the court. Good afternoon. I'm Elizabeth Block with Greenberg Traurig and I'm here representing the appellant AOS Legal Technologies Inc. It's a Japanese corporation and I'll be referring to them as AOS Japan. Now, the underlying lawsuit is very briefly it's a claim by Document Operations, the appellee, that AOS Japan misappropriated its trade secrets and breached the party's contract by selling competing VDR products in Japan and South Korea. And the product, VDR, it's a virtual data room. It's where parties can, to a negotiation or litigation, can go in and securely view confidential documents. It essentially replaces the old deal room. So, there are two orders at issue here before you in this interlocutory appeal. First, we have a preliminary injunction that was issued and entered without any notice to my client AOS Japan that preliminary injunctive relief would even be considered by the court and certainly not granted. And also that on its face is contrary to the terms of the party's contract. So, it grants more relief than Document Operations is entitled to. And then the second order is an expedited discovery order was issued the same day and it orders pre-service emergency discovery against AOS Japan. We believe in violation of a treaty between the United States and Japan. That's the U.S.-Japan Consular Convention. And it also was issued without good cause. Now, the lack of notice on the preliminary injunction is, I believe, a very straightforward issue that's covered in our brief. I certainly want to answer any questions the court may have about any aspect of this case, including the lack of notice. But I do want to spend some of my short time with you today talking about the other issues and appealing to your sense of judicial efficiency to address the other issues as well. And that includes our substantive challenges to the preliminary injunction and also our challenges to the expedited discovery order. But first, I do want to make just a couple of quick points on the lack of notice. First, not only did AOS Japan not get any notice that the court would consider granting preliminary injunctive relief, we didn't get any notice of a motion for preliminary injunctive relief. We didn't get any notice of a setting for preliminary injunctive relief. Not only did we fail to get that notice, but we got affirmative notice from both document operations and the court that there would be a subsequent hearing on the preliminary injunctive relief. We knew that a TRO hearing was set for June 18th, and we were informed there would be a subsequent hearing. And we're entitled to rely on those notices from both the plaintiff and the court. And the second thing I ask you to keep in mind regarding the lack of notice is a TRO, a temporary restraining order, is very different from a preliminary injunction. It only lasts 14 days. It expires by its terms. It can be extended under certain circumstances, but it automatically expires without extension after 14 days. And that's very different than a preliminary injunction that is going to last the remainder of the case through final trial. And that's why both the procedural rules regarding notice and the procedural rules regarding the availability of an appeal are very different for TROs than they are for preliminary injunctions. They are different animals. And it's a perfectly acceptable litigation strategy I submit to you to allow a very brief 14-day TRO to be entered against your client while you're preparing to defend against a subsequent preliminary injunction hearing. There are any number of reasons why a party may choose to not contest a TRO knowing that it will have the opportunity to contest a temporary injunction. There may be budgetary concerns. They may need time to identify witnesses and interview witnesses, prepare them for a hearing. The parties may need time to review documents or gather affidavits. Or there may even be scheduling concerns or travel considerations, particularly with a foreign defendant. So there are any number of reasons why a party may choose, as we did, not to contest the TRO knowing, believing, because we had gotten notice from both the court and document operations that there would be a subsequent preliminary injunction hearing. Counsel, as I understand it, your argument basically is that what happened at the district court level with respect to the twin imposition of a TRO and a preliminary injunction offends the notion of procedural due process that's according to any defendant, whether foreign national corporation, foreign government, foreign anything, that the methodology employed by the court deprived your client of procedural due process. Absolutely. It did with respect to the permanent injunctive relief, not with respect to the temporary, which is long expired. But absolutely, regardless of the fact that my client is a foreign corporation, the rules apply to everyone. The rules apply to every defendant and every plaintiff in court and document operations and the district court are not excused from complying with Rule 65, which absolutely requires notice of a temporary, I'm sorry, of preliminary injunctive relief and we never got that notice. And aside from the procedural defect, I want to touch on the substantive defects as well. And I do encourage the court to address the substantive defects, even if you vacate the preliminary injunction on the procedural lack of notice grounds. Otherwise, we're going to be right back up here before you when a new preliminary injunction is entered. So I appeal to your sense of judicial efficiency to address those substantive issues now. And on its face, the preliminary injunction prohibits conduct that is not prohibited under the party's contract. And there are several examples of this listed in our brief, but the one I want to focus on here is the provision that enjoins AOS Japan from marketing or distributing products that compete with document operations propel VDR in Japan and South Korea. And that has to do with exclusivity under the contract. When the contract was first signed, exclusivity was a two-way street. On the one hand, document operations agreed that AOS Japan would be its exclusive distributor and marketer of its product in Japan and South Korea. And in turn, AOS Japan agreed that it would market and distribute only document operations product in Japan and South Korea. So that was the tit for tat. That was the mutually exclusive relationship. It was bargained for by the parties and agreed to by the parties. But that mutual exclusivity went away in the third amendment to the contract that was entered into in, I believe, August of 2019. And the amendment number three says, and I believe it's set out on page one of our brief, that during the extended term, and the extended term was July 2019 through July 2020, and that's when the contract completely terminated. So during the extended term, the license shall be non-exclusive and any provisions of the agreement that reflects an exclusive relationship shall be considered amended accordingly. Also, is there anything authoritative that says that in circumstances like this with a contract that has a finite term, conjunctive relief would either automatically expire or could not extend beyond the date, the final date of the contract? Well, under the terms of the contract, this agreement by my client not to sell any competing products ended on the termination date of the contract itself. There was no availability of extending it beyond that term. But my argument goes back a year. So the final year of the contract, according to that amendment, when the parties did away with mutual exclusivity, they did away with every provision in the contract that reflected an exclusive relationship. So what that meant was that Document Operations was free to use other companies other than my client to market and distribute its product in Japan and Korea, and in turn, AOS Japan was free to market and distribute other competing products. And yet that's what Document Operations has accused us of doing. So they've accused us of doing something that the contract permits, and worse, the preliminary injunction prohibits us from doing something that the contract specifically permitted. Now, what that means, of course, is that Document Operations, in the context of a preliminary injunction, Document Operations cannot show a likelihood of success on the merits with respect to that issue. In fact, the record affirmatively negates their ability to show likelihood of success on the merits. And again, we urge the court to address the substantive issue, these and the others in our brief, as well as the procedural one in the interest of judicial efficiency. The issue's live. It's been fully briefed by the parties. It's a pure question of law based on the unambiguous language of the contract. So to sum up with respect to the preliminary injunction, it's both procedurally and substantively defective, and we ask that you set it aside and vacate it on all the grounds that we've alleged. Now, I want to turn to the expedited discovery order, and the first thing I want to talk to you about is jurisdiction. This court does have jurisdiction to review what would otherwise be an interlocutory discovery order on two grounds, the collateral order doctrine and this court's pendant jurisdiction. And it's because of the unique circumstances of the case that exercising jurisdiction under either of those two grounds in this case is not going to open the floodgates to interlocutory appeals of garden variety discovery orders, because this is not a garden variety discovery order. This is a discovery order that violates an important treaty between the United States and Japan. It violates the U.S.-Japan Consular Convention in several respects, and that's why interlocutory review is warranted here. The collateral order doctrine applies when an merits, and it would render that important question effectively unreviewable on a regular appeal, and all three of those factors are met here. And again, what makes this order appealable is the fact that the expedited discovery ordered by the district court against a non-served party, and to date we have not yet been served. It's been over a year since the suit was filed, and my client still has not been served under the Hague Convention, as we've insisted. What makes it appealable under the collateral order doctrine is that it violates the U.S.-Japan Consular Convention. And the collateral order doctrine is applied categorically, and that makes it a perfect fit for this case. It applies to categories of orders, not just piecemeal, this order or that order. And again, the category we've got here is an order that violates an treaty between the United States and a foreign country. You also have pendant jurisdiction, and that's available to you in your discretion, because the preliminary injunction is before you under 28 U.S.C. section 1292. I may be getting that wrong, but you certainly have interlocutory jurisdiction to review the preliminary injunction, and you may exercise pendant jurisdiction to also review. I see that we've lost one of our justices. Should we wait? I'm sorry, have you concluded your see what's going on to get them back? Oh, guess who just walked into my chambers? Excellent. This would be Judge Engelhardt. Why don't we pull up a chair and get him involved? Oh, no, he's a background guy now. Here. I can hear at least now. Excellent. Are we ready to proceed? For the record, it was 356 when my screen froze up, so I heard you answer my question all the way to the 356 mark. Not that you know what you were saying at that point, but I did hear most of your argument. It says 347. I'm happy with 347. Okay, that makes it easy. Okay, all right, let's go forward then. Okay, you bet. I was talking about pendant jurisdiction, another basis for this court to exercise jurisdiction in its discretion, and pendant jurisdiction, a good reason for it is to promote judicial efficiency, and that would certainly be accomplished here. It admittedly should only be exercised in rare and unusual circumstances, but the violation of a treaty between the United States and Japan is assuredly a rare and unique circumstance, and it does violate the treaty in several respects. The main one I want to bring to the court's attention is that the discovery order requires a video deposition of my client, a Japanese corporation, and that is prohibited under the consular convention. There are very specific rules about how to take a deposition of a Japanese individual or company representative, and those requirements must be followed, even as the U.S. State Department indicates on its website, and yes, those procedures can be cumbersome, but they're doable, and parties do them all the time, and it's required here. Document Operations doesn't get a free pass from this important treaty, and then finally, still on the discovery order, I'd like to address the lack of any good cause for the discovery order, and that brings me to the issue of service of process. Service of process is an issue in this case only because Document Operations has made it an issue. They've done that by alleging in their brief that our supposed evasion of service somehow justifies the discovery order. Now, that's not the argument they made to the court when they were seeking the expedited discovery. Their basis was an upcoming preliminary injunction hearing, which of course never occurred, so now they contend that it's justified because we've been that we be served with process under the Hague Convention, as is our right as a foreign defendant, and that's what we ask this court to address, to give guidance to both the parties and to the district court. Again, because it's an issue that Document Operations has raised with respect to the discovery order, we are asking this court to make a clear ruling that it is appropriate for a service of process under the Hague Convention, and more importantly, insisting that it be served under the Hague Convention is not and cannot be, as a matter of law, evasion of service of process. And unless there are any other questions on anything I've discussed so far, I'll reserve the remaining time for rebuttal. Counsel, as I understand it, if we grant the relief that you seek, this will be kicked back to the district court, literally to start from scratch, awaiting service of some sort. Is that correct? Or another TRO issue? Well, we don't know. Document Operations might move for, they might seek a TRO, they might just go straight to a preliminary injunction hearing. We don't know what their plan is, but yes, we would be starting from scratch. And the crazy thing about this case is it's been pending for over a year, and Document Operations has never even once attempted to service under the Hague Convention. We could have been well on our way to resolving this case on the merits, if they had only done that soon after they filed the lawsuit. Thank you. Thank you, Ms. Barr. Mr. Newell? May it please the court. Scott Newell for the Plaintiff's Appellee Document Operations, LLC. Your Honors, I'd like to address Ms. Block's legal arguments and intend to address them, but before I do, I must give the court a little factual predicate that she has omitted. We provided a timeline yesterday that had relevant events with respect to the lawsuit's and the preliminary injunction being granted literally from April 30th of last year until June 18th or June 19th of last year. And I will discuss those events in the course of my argument with respect to notice, but I need to go back in time because the factual issues here are critical to any ruling about the likelihood of Judge Hanks's ruling that we had demonstrated, Document Operations had demonstrated a substantial likelihood of prevailing on the merits, irreparable harm, the fact that their harm outweighed any harm to AOS and the public interest. So let me begin in 2016. Document Operations is owned by a gentleman, a principal by the name of Mr. Berry, and a small team of his developed this DVR technology that Ms. Block referred to, and they spent millions of dollars of hard-earned capital trying to develop this over the course of a year plus. And in early 2017, Mr. Berry and his team go to New York for a technology conference, an annual technology conference, and there they meet this gentleman by the name of Thomas Sasaki is his last name, S-A-S-A-K-I. And Mr. Sasaki is the owner, the principal of AOS Legal Technologies, Inc. And Mr. Sasaki is very interested in this VDR technology because even though his company, AOS, is a legal technology entity in Japan, a very big legal technology company there, they don't have this VDR technology and they can't develop it. And he tells this to Mr. Berry, and Mr. Berry says, well, we've got this product, it's here, we're marketing it here at this conference. And then they begin a series of negotiations that leads to the execution of what is called the Requestech License Agreement in August of 2017. And that is, we'll refer to it as the RLA, the initial agreement. And Requestech is the predecessor of Mr. Berry's initial company that ultimately over time becomes Document Operations. So in August of 2017, AOS and Requestech execute the RLA, and it provides in relevant part that Document Operations is giving an exclusive license to AOS to market the VDR product, then called Propel, now called DocOps, in Japan for a one-year term. And the exclusivity, contrary to what Ms. Block just told the court, is one-way, meaning AOS got an exclusive license to market it, but that's all they got. They got an exclusive license to market the VDR in Japan for one year. There was no corresponding obligation on the part of AOS. And they added an extra location in South Korea, which is how South Korea comes into play. And then a year later, when the license comes up for renewal, they extend it again for another year. And then the third amendment, which is what Ms. Block is referring to in her argument, is executed on August the 19th of 2019. And this amendment, when you look at the document, it's a one-page document, I believe, and it says that the exclusivity that had been granted in the RLA is no more. And so what happened is that Document Operations took back its exclusive license to AOS and now had the right to market and license it elsewhere. AOS did not get... It is. I've never had us lose two judges. There they are. Okay. I see them. We're both half-faced this afternoon as we try to squeeze into the screen together. All right. I'll restart the clock. Mr. Neuro, go ahead. Thank you, Your Honors. That letter from Mr. Sasaki is at the record 186, record on appeal 186. And Mr. Sasaki, in that letter, says to Mr. Berry, we have developed a competing VDR called AOS VDR. That is the admission that leads Judge Hanks ultimately to find that there has been a substantial likelihood of success on the merits because the RLA says in paragraph 4.9, they shall not, AOS shall not develop, market, or sell a competing VDR during the term. And the term is through July of 2020, July 31st of 2020. Mr. Sasaki says this on February the 23rd of 2020. That is what kicks off the events leading to this lawsuit. Mr. Berry sends a cease and desist letter. Mr. Sasaki essentially ignores it. Mr. Berry is ultimately forced to retain counsel. Counsel, I hate to jump your timeline a little bit. And I understand that the history you laid out in the brief. On the timeline that you sent us though, and in the brief, I don't see, maybe I'm missing it. I'm going to ask you for a record site for when your opponent or your opposing party is provided notice of the preliminary injunction. You have listed on here that they've given, I think three times from both you as well as the court, they received three notices, but they're all pertinent to the TRO. And the TRO, of course, can be issued without notice and without service. So that's not so much of an issue. But in this case, I think the gravamen of their appeal is we got a preliminary injunction without any notes. So where in the record can I find that they are incorrect? Your Honor, the answer to the question is there is no notice of a hearing, per se, on a preliminary injunction. However, the Fifth Circuit, since 1965 in a case called Dilworth v. Reiner, into 1996 with an opinion by Judge King in a case called Achilles, and then by Judge Wiener in 1999 in a case called Carmax, has made it very explicit that a district court may convert a motion for a temporary restraining order into a motion for a preliminary injunction where two conditions have been satisfied. The first, the defendant receives notice of the motion for the temporary restraining order, which occurred here by all admissions. Second, that the defendant had an opportunity to respond to the motion for the temporary restraining order. So the case law in the Fifth Circuit, since 1965, has been that there need not be a formal notice of a hearing on a motion for a preliminary injunction in order for Rule 65A to be satisfied. So I commend those three cases to the court, which are cited in our briefs. And what happened here, and the reason the timeline I gave the court yesterday is so critical, is for what you've just indicated, Judge Englehart. They had 41 days from the date we served them with the motion for the temporary restraining order until the date that Judge Hanks enters the preliminary injunction to respond to that motion, and they didn't lift a finger to respond. Now, not only did they not respond in writing, Judge Hanks gave them two hearings. The first hearing on May the 17th, I believe May the, uh, yes, I think it was May 27th. Judge Hanks recesses that hearing to make sure that we had given AOS notice of that hearing, and they had an opportunity to respond. He stopped the hearing, adjourned, and told me to go make sure they had noticed, which I had done, and which I then proceeded to do again. AOS wouldn't comply. Their counsel refused to give dates for the 18th. Again, notices went out. Again, their counsel had an opportunity to appear and file a brief. They did not do so. And what's very critical, and I've never seen this in 30 years of practice, Judge Hanks gets on the phone on June the 18th during the hearing and calls Ms. Block's colleague, Mr. Stratton at Greenberg Trial Rig, and says to, through his case manager, you know, we're having this hearing today. Do you want to respond? I haven't received anything. And Mr. Stratton tells the case manager, and this is in the record from the hearing on June 18th, I am not coming on the telephone call. So the court bent over backwards to give them an opportunity to respond to the motion for temporary restraining order. And contrary to what Ms. Block said, they were on notice that we were seeking a preliminary injunction because it was in the first amended complaint that was filed on May the 8th of 2020 and which they received on May the 8th of 2020. Now in the Carmax case in 1999, Judge Wiener used these facts, these same facts essentially, to say that the preliminary injunction, the temporary restraining order, could be converted into a preliminary injunction. Judge Wiener and the panel there upheld the injunction. Doesn't that ordinarily apply, though, with respect to U.S.-based corporations, that somehow this FRCP Rule 65 procedure and the allowable options to convert into a preliminary injunction, how does that override treaties involving foreign corporations? And you have question of notice versus sufficient notice under a treaty. That seems to me to be at least as wide as the Pacific Ocean in difference between the cases you cite and what is required under a treaty between the United States and Japan. Tell me how somehow we bridge that enormous gap and allow someone who over the phone is saying, I'm not taking the call because I'm not risking subjecting my client to somehow general jurisdiction for an appearance in this with everything that could go wrong which did go wrong. And I'm struggling with that. Judge Hicks, the answer to your question is that the Hague Convention, which was one of the bases for their argument that they needed to be served with process before the TRO and the preliminary injunction could be entered, they argued that below. Well, they've argued it here, I believe. They waived any arguments below because they didn't appear. And so all of their substantive arguments, we contend, have been waived by not being made below. But let me answer your question this way. The Hague Convention has a specific provision within it that says provisional or emergency provision relief is not covered by the Hague Convention. That is a specific provision within the Hague Treaty. Now they're talking here today about the Japanese Consular Convention and that only applies with respect to discovery. It doesn't have anything to do with the service issues that she's raising. So my answer to your question... And I understand that with respect to a TRO. And there are many times that district judges will talk to both parties and say, you know, I'm not going to issue a TRO. I'm going to hold the hearing on a preliminary injunction. It's going to be set seven days from today. Now that's a standard procedure that's used in district courts. But to say you haven't appeared, you have technical notice of a TRO, which is fine. You can get it by fax. You can get it by hearsay. Notice can be provided of a TRO and you can be bound by that potentially, if the treaties allow it. But here, once you move from a TRO to a preliminary injunction, you've changed emergency relief into not emergency relief number one, that's a TRO, but emergency relief number two, a preliminary injunction, which has far more teeth for a much longer period of time in terms of binding a party who received technical notice, but insufficient notice under these circumstances. That's my concern. It sounds like this was running afoul of procedural due process. And whether the court took advantage of the situation or whether it was, you know, your arguments, you can proceed to do this. I'm very concerned that there is a foreign corporation who is requiring ordinary service of process and sufficiency of service of process to take place, not for the TRO purpose. You really can't defeat that very easily. But combining a TRO with a preliminary injunction in this kind of situation seems to not sit very well under our law. And I know your position, but, you know, if the shoe were on the other foot, I'd be very concerned about the United States District Court jumping into this kind of situation and according the kind of, not the TRO relief, but the preliminary injunction relief that was handed down in this particular case. I'm very unsettled in thinking that that is a proper procedural procedure or B, that it's substantively correct and defensible given the status of the defendant as a Japanese corporation. I have to grant Mr. Newerson some more time. I think we're sorry about that. We're eating up his time. If you need some more time. Well, Judge, I wasn't even sure with the clock where I was in the time. So I don't know how much time I have left. You have four minutes and 30 seconds on the clock. Okay. Thank you. I think I will need some more time to address the other arguments that this block has made. But Judge Hicks, to come back to your question. Okay, go ahead. May I proceed, Judge Dennis? Yes. Thank you. Judge Hicks, what I would say to you is two things. First of all, they had counsel. Okay. This is not a Japanese corporation, American counsel. They're not operating in the dark here under some form of, you know, an American lawyer serves them out of the blue and emails them and now they've got to immediately show up. This is a very large company in Japan. They retained Mr. Miss Block and her firm. Um, as of the first hearing, because we get it, we get an email from her colleague, Mr Stratton, um, right before the T. R. Right during the T. R. O. Right before it was supposed to start. And as we were preparing on May the 27th and Mr Stratton says, I am representing A. O. S. Please do not communicate further with my client. So as of May 27th, the company had legal counsel and we were begging them, begging them contrary what Miss Block says to accept service. Um, I said pleadings to Mr Stratton to wave service. They need to accept service. Can't they just say you serve me and then we'll talk? Well, and and they what they did is more than just that. And the reason why this issue of service has come up here. Um, and the reason why Judge Hanks, um, a an order effective a few days ago last week granting alternative service is because A. O. S. was playing games with a domestic subsidiary. Apparently they shut it down when we tried to serve them with with process. So we had a very difficult time trying to get this company served contrary to what she has told the court that you've served them by substituted service. How does that bootstrap the procedures that occurred that we're all talking about here today? Maybe I'll agree. The substituted service may be sufficient. Okay, that's arguendo. Okay. Now, does that mean that because they were served last week that you've got a claw back and say, Aha, I got you on the T. R. O. In the preliminary injunction. Let me clarify, Judge Hicks. We did serve them alternatively. Yet the order just came down from Judge Hanks about a week or so ago, and he is not memorialized it in writing. He's memorialized it in the record of a hearing that was held on May the 28th or so. Eso no service has yet been effectuated in the alternative. Eso that is not our argument that somehow we have can claw that claw this back. Our argument is is that the Fifth Circuit has said since 1965 that all that is required for a district court to convert the motion for T. R. O. Into a motion for P. I. Is notice of the motion and the opportunity to be heard. An oral hearing judge is not required. And Judge Wiener in the called Capa versus Chili's made that clear. It's been case along with the circuit for another case, so they were not entitled to an oral hearing unless the facts were disputed. And when they didn't respond to the motion for T. R. O. For 41 days, the judge in the Southern District of Texas in Houston under local rule 7.4 can take the failure to respond as a lack of opposition. So they essentially waived their any arguments here by waiting 41 days and not responding. Eso let me turn, though, because I know I know I've taken much much of my time on this issue of notice. I want to address briefly the issue of the discovery order, because I think it's pretty clear from the Supreme Court's decision decision in the Mohawk Industries case in 2000 and nine that this court does not have interlocutory jurisdiction under the collateral order doctrine. The decision in Mohawk Industries makes it very clear that it's that the class of cases, the class of orders that is subject to a you change your time, but I think we should grant you five additional minutes. Thank you, Judge. I greatly appreciate that. So I was saying the the Mohawk Industries case makes it clear that if it's not one of the class of cases that is subject to interlocutory appeal, the collateral order doctrine doesn't apply in a pretrial discovery order, such as what Judge Hanks entered on June. The 19th is one of is of that class of cases. Now, this block says to the court, well, we've got the pendant appellate jurisdiction doctrine, but that also has problems with it because there's two criteria that must be met. First, the preliminary injunction and the discovery order must be inextricably inextricably intertwined, which they're not. One is a an order on the merits. One is a discovery order. And that the second criteria is that review of the E.D.O. of the expedited discovery order is necessary to ensure meaningful review of the preliminary injunction. There's nothing about the expedited discovery order that's necessary to for meaningful review of the preliminary injunction. So our position, with all due respect, is that there is no jurisdiction of the E.D.O., regardless of her arguments on the consular convention, whether there was cause. So that is our first contention on the expedited discovery order. But our second contention is that even if this court were to assert jurisdiction and say we are going to review it, there was good cause for very concerned and justifiably so about their efforts to engage in the service, what we've called the service evasion. And so we submit that there was good cause for him to enter that. And he makes that clear at the hearing that succeeded right after this June 18th hearing. The next hearing, I think he talks about the good cause issue. So we say to the court, affirm the well, there is no jurisdiction or alternatively affirm Judge Hanks's expedited discovery order. Unless there are other questions on either one of these issues, I will yield the excessive time Judge Dennis graciously gave me back to the court. Thank you, Mr. Doerr. Ms. Block, do you need additional time? You asked for three minutes on rebuttal. Do you need any more time? No, Your Honor. Three minutes should do it. I hope to give some back to the court. May it please the court. A couple of quick points on the lack of notice. And I like Mr. Newar's timeline because it demonstrates that we got multiple notices of ATRO hearing and only ATRO hearing. The only thing that I would add to his timeline is on the last page between the June 9th and the June 17th date. On June 13th, Mr. Newar sends a letter to the court. That's where he requested the expedited discovery. And he says he needs it, quote, to prepare for the subsequent preliminary injunction hearing, close quote. And that was sent to my colleague, Mr. Stratton, AOS's counsel. So again, we had noticed that there would be a subsequent preliminary injunction hearing, and we were entitled to rely on that. Another point on the lack of notice, Mr. Newar mentioned that the complaint that they filed included a request not only for temporary injunctive relief or temporary restraining order, but also preliminary injunctive relief. And I would simply point out that a complaint is a tool for initiating a lawsuit and notifying the parties about what the relief the party is going to ultimately request in the case. The complaint is not a basis for the court granting relief without some kind of a procedural device, a hearing on a motion for summary judgment, a hearing on a motion for preliminary injunctive relief. So the fact that that request was in the complaint is of no moment here. On the likely success on the merits, I'll address that again briefly because Mr. Newar spent quite a bit of time on it as well, which again indicates why the court should address the substantive challenges to the preliminary injunction. Again, that has to do with the exclusivity. Both sections 2.1 of the contract and 4.9 of the contract reflect an exclusive relationship. And so they were both amended when the parties deleted exclusivity. Mr. Newar makes it sound like a unilateral contract. It wasn't. It was mutual. There were mutual agreements. It was mutually binding. The language in the amendment, amendment number three, is susceptible to only one interpretation. Document Operations, after that, for the last year of the contract, from July of 2019 through the end of the contract in July of 2020, Document Operations was free to use other companies, other than my client, to market its product in South Korea and Japan. And in turn, my client, AOS Japan, was free to market other competing VDR products in Japan and South Korea. Now, the parties continued their relationship. We did continue to market their product, but we weren't the only ones doing it, and we could market others as well. So the mutual exclusivity is what the parties amended in amendment number five. And I am three, two, one, over. Unless there are any questions, I thank you for your time. Thank you very much.